UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JUAN RODRIGUEZ,                         :
    *Plaintiff*,                        :
                                        :
v.                                      :    Case No. 3:20-cv-1872 (SVN)
                                        :
DIANE EASTER, et al.,                   :
    *Defendants*.                       :

## INITIAL REVIEW ORDER

Plaintiff Juan Rodriguez is an inmate confined at the Federal Correctional Institution in Danbury, Connecticut ("FCI Danbury"). He has filed a Complaint under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), against Warden Diane Easter, Medical Staff Member A. DuKane, Com-Shop Worker Coutino, and SIS Worker Pizzano. Compl., ECF No. 1. The allegations arise from Plaintiff's confinement at FCI Danbury in 2020. For the following reasons, the Court will dismiss the Complaint.

### I.    FACTUAL ALLEGATIONS

The Complaint and its exhibits set forth the following alleged facts, which are accepted as true for purposes of this initial review.[1] Plaintiff, age sixty-seven at the time he filed this action, has been in the custody of the Federal Bureau of Prisons ("BOP") since 2012. ECF No. 1, ¶ 1. Prior to his incarceration, he suffered from various medical conditions, including partial vision loss from cataracts. *Id.* An optometrist examined Plaintiff in April 2019 and noted that, with corrective lenses, his distance vision in both eyes was 20/30 and his near vision in both eyes was 20/25. Ex. B, ECF No. 1-1 at 3. The optometrist indicated that Plaintiff's vision could not be

---

[1] *See Dehany v. Chagnon*, No. 3:17-cv-00308 (JAM), 2017 WL 2661624, at *3 (D. Conn. June 20, 2017) (for purposes of Section 1915A review, "[t]he Court must accept as true all factual matters alleged in a complaint").

corrected to 20/20 because he suffered from bilateral, age-related cataracts in both eyes, and prescribed bifocals. *Id.*

In early 2020, unspecified prison officials at FCI Danbury allegedly ordered Plaintiff to shovel snow even though he allegedly had been issued a medical pass excusing him from participating in activities such as bending, twisting, reaching, and shoveling. ECF No. 1, ¶ 2; Ex. C, ECF No. 1-1 at 5. At the time, Plaintiff suffered from kidney stones and a painful "bone on bone spinal injury." ECF No. 1, ¶ 9. Plaintiff walked seventy-five feet in the cold wearing only flip flops, shorts, and a t-shirt to inform a lieutenant that he refused to shovel snow and then walked 100 feet back to his cell. *Id.*, ¶ 2. On January 31, 2020, Plaintiff received an incident report for being insolent to a staff member because he had refused to shovel snow. Ex. F, ECF No. 1-1 at 13. On February 6, 2020, a disciplinary hearing officer found Plaintiff guilty of the charge and sanctioned him to thirty days loss of email privileges. *Id.*

On May 22, 2020, Plaintiff submitted a BP-9 Administrative Remedy request to Warden Easter asking her to reconsider the denial of his prior request for compassionate release because his medical conditions put him at a higher risk of becoming severely ill if he contracted COVID-19. ECF No. 1, ¶ 13; Ex. D, ECF No. 1-1 at 10. On September 15, 2020, Warden Easter denied the request and informed Plaintiff that he could appeal her decision to the Northeast Regional Director of the Bureau of Prisons. Ex. D, ECF No. 1-1 at 9.

In July 2020, a younger inmate assaulted Plaintiff in his housing unit. ECF No. 1, ¶ 13. Plaintiff suffered a 2.5 centimeter wound to his head that required four stitches. Ex. H, ECF No. 1-1 at 16-20. The inmate who assaulted Plaintiff, who was housed in the special housing unit, sent threats to Plaintiff. ECF No. 1, ¶ 15(6).

Medical Staff Member DuKane allegedly denied Plaintiff treatment for back pain and skin inflammation. ECF No. 1, ¶ 9. In August 2020, Plaintiff submitted a request to the medical department seeking treatment for back pain and inflammation of the skin on his arms and legs. *Id.*; Ex. E, ECF No. 1-1 at 12. According to this form, which Plaintiff submitted as Exhibit E to his Complaint, the problems had begun more than 20 years before he sought treatment. *Id.* Plaintiff endured allegedly excruciating pain for over four weeks without receiving medical treatment. ECF No. 1, ¶ 9.

Plaintiff was housed in a unit on the third floor. *Id.* Because he suffers from cataracts in both eyes, back pain, and kidney stones, it was painful and difficult to see as he traveled up and down the stairs to his housing unit. ECF No. 1, ¶ 9. Plaintiff reported the problem to Unit Manager Smith, who in turn allegedly spoke to DuKane. *Id.* According to the Complaint, DuKane indicated that Plaintiff suffered from no medical problems. *Id.* Plaintiff is still housed on the third floor. *Id.*

Plaintiff tried to starve himself to avoid experiencing his painful medical conditions. ECF No. 1, ¶ 10. At one point, he lost consciousness and prison officials transported him to a hospital for intravenous fluids. *Id.*

On one occasion "Com-shop Worker" Coutino put a dirty screwdriver in Plaintiff's food and accused him of stealing. ECF No. 1, ¶ 11. Coutino did not issue Plaintiff an incident report for stealing. *Id.*

SIS Officer Pizzano lost items of Plaintiff's personal property including legal papers, food, and family photographs. ECF No. 1, ¶ 12. Pizzano left Plaintiff with only a pair of shorts and a pair of flip flops to wear for several weeks. *Id.* Plaintiff sent a request to Warden Easter about the

3

loss of his property, but she ignored his request. *Id.*

On October 8, 2020, Plaintiff sent a request to his correctional counselor claiming that he had been assaulted by another inmate and had lost his property. Ex. M, ECF No. 1-1 at 27. He indicated that he had attempted to informally resolve the matter by speaking to Deputy Warden Comstock, Lieutenant Hernandez, Unit Manager Smith, Medical Staff Member DuKane, and Warden Easter. *Id.* Either Plaintiff or his correctional counselor spoke to a property officer who indicated Plaintiff's property had been lost. *Id.*

On December 3, 2020, Plaintiff learned that he suffered from a ruptured hernia. ECF No. 1 at 12.

## II.   STANDARD OF REVIEW

Under 28 U.S.C. § 1915A(b), district courts must review prisoners' civil complaints against governmental actors and *sua sponte* "dismiss . . . any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Liner v. Goord*, 196 F.3d 132, 134 & n.1 (2d Cir. 1999) (explaining that, under the Prisoner Litigation Reform Act, *sua sponte* dismissal of frivolous prisoner complaints is mandatory); *Tapia-Ortiz v. Winter*, 185 F.3d 8, 11 (2d Cir. 1999) ("Section 1915A requires that a district court screen a civil complaint brought by a prisoner against a governmental entity or its agents and dismiss the complaint *sua sponte* if, *inter alia,* the complaint is 'frivolous, malicious, or fails to state a claim upon which relief may be granted.'" (quoting 28 U.S.C. § 1915A)). This standard of review "applies to all civil complaints brought by prisoners against governmental officials or entities regardless of whether the prisoner has paid a filing fee." *Shakur v. Selsky*, 391 F.3d 106, 112 (2d

4

Cir. 2004).

Rule 8 of the Federal Rules of Civil Procedure requires that a plaintiff plead only "a short and plain statement of the claim showing that the pleader is entitled to relief," *see* Fed. R. Civ. P. 8(a)(2), to provide the defendant "fair notice of what the . . . claim is and the grounds upon which it rests," *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original). A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although the Federal Rules of Civil Procedure do not require "detailed factual allegations," a complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555-57. Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claim] is improbable, and . . . recovery is very remote and unlikely." *Id.* at 556 (internal quotation marks omitted).

Complaints filed by *pro se* plaintiffs, however, "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing the "special solicitude"

courts afford *pro se* litigants).

### III.     DISCUSSION

Plaintiff contends that Defendants were deliberately indifferent to his safety and need for medical treatment in violation of the Eighth Amendment. ECF No. 1 at 8. He also characterizes much of Defendants' conduct as retaliatory. *Id.*, ¶¶ 9-11. Plaintiff seeks $1,000,000 in monetary damages and "an immediate protection order" for his family. ECF No. 1 at 13.

#### A.     Injunctive Relief

Plaintiff brings this action under *Bivens*. *See* ECF No. 1 at 2. In deciding *Bivens* in 1971, the Supreme Court held that, "even absent statutory authorization, it would enforce a damages remedy to compensate persons injured by federal officers who violated the prohibition against unreasonable searches and seizures." *Ziglar v. Abbasi*, ___ U.S. ___, 137 S. Ct. 1843, 1854 (2017). Thus, by definition, a *Bivens* action is an action for money damages only. *See Yorzinski v. Imbert*, 39 F. Supp. 3d 218, 229 (D. Conn. 2014) (explaining that "under *Bivens*, a court may only award money damages, not injunctive relief, to a prevailing party") (citing *Polanco v. U.S. Drug Enf't Admin.*, 158 F.3d 647, 652 (2d Cir. 1998)). As injunctive relief is not available under *Bivens*, Plaintiff's request for injunctive relief in the form of an order of protection for his family is dismissed.

#### B.     Capacity

A claim under *Bivens* is the "federal analog to suits brought against state officials under . . . § 1983." *Iqbal*, 556 U.S. at 675-76. In *Bivens*, "the Supreme Court 'recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights.'" *Arar v. Ashcroft*, 585 F.3d 559, 571 (2d Cir. 2009) (quoting *Corr.*

*Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001)). A *Bivens* claim may be brought against a federal official in his individual capacity, rather than his official capacity, and only for his own acts. *See FDIC v. Meyer*, 510 U.S. 471, 485-86 (1994) (*Bivens* authorized lawsuits for monetary damages against individual federal officials); *Higazy v. Templeton*, 505 F.3d 161, 169 (2d Cir. 2007) ("The only remedy available in a *Bivens* action is an award for monetary damages from defendants in their individual capacities." (citing *Polanco*, 158 F.3d at 652)).

Plaintiff does not specify whether he has named Defendants in their individual or official capacities. As a *Bivens* remedy is available only from Defendants in their individual capacities, the Court considers Defendants to be named in their individual capacities only.

### C. Claims

Under current Supreme Court law, the *Bivens* remedy is limited, and expanding it beyond the limited contexts in which it has been recognized in the past is a "'disfavored' judicial activity." *Ziglar*, 137 S. Ct. at 1857. The Supreme Court has recognized a *Bivens* remedy under the Fourth Amendment's Search and Seizure Clause, the Eighth Amendment's Cruel and Unusual Punishment Clause, and the equal protection component of the Fifth Amendment's Due Process Clause. *See Bivens*, 403 U.S. at 389, 397 (implying a private cause of action under the Fourth Amendment for an unreasonable search and seizure claim against Federal Bureau of Narcotics agents for arresting a man in his own home without a warrant); *Davis v. Passman*, 442 U.S. 228 (1979) (implying a *Bivens* claim under the equal protection component of the Fifth Amendment's Due Process Clause for gender discrimination arising from the defendant congressman's decision to fire his female secretary); *Carlson v. Green*, 446 U.S. 14 (1980) (implying a *Bivens* claim under the Eighth Amendment's prohibition against cruel and unusual punishment arising from prison

officials' failure to treat an inmate's asthma that resulted in the inmate's death). Beyond these three factual circumstances, the Supreme Court has declined to recognize an implied cause of action for damages under the Constitution. *See Ziglar*, 137 S. Ct. at 1854-55.

In *Ziglar*, the Supreme Court made clear that courts should not imply rights and remedies under *Bivens* beyond the three contexts already recognized. *Id.* at 1857 ("Given the notable change in the Court's approach to recognizing implied causes of action, however, the Court has made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity."). The Court also set forth a two-step analysis to determine whether to imply a *Bivens* cause of action in a new context or to a new category of defendants. *Id.* at 1859-60. In analyzing whether a new cause of action should be implied, the court must first determine whether the context in which the claim arises is new. *Id.* at 1859. "If the case is different in a meaningful way from previous *Bivens* cases decided by [the Supreme Court], then the context is new." *Id.*

If a case implicates a new *Bivens* context, the court then must consider whether there are "special factors counselling hesitation" in extending the *Bivens* remedy "in the absence of affirmative action by Congress." *Id.* at 1857, 1860. The special factors inquiry requires courts to "consider the risk of interfering with the authority of the other branches, and . . . [to] ask whether 'there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy[]' . . . and 'whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed.'" *Hernandez v. Mesa*, ___ U.S. ___, 140 S. Ct. 735, 741-44 (2020) (quoting *Ziglar*, 137 S. Ct. at 1858). However, "if Congress has created 'any alternative, existing process for protecting the injured party's interest' that itself may 'amount to a convincing reason for the Judicial Branch

8

to refrain from providing a new and freestanding remedy in damages.'" *Ziglar*, 137 S. Ct. at 1858 (quoting *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007)).

### 1. Eighth Amendment Medical Claim

Plaintiff alleges that Defendant DuKane was deliberately indifferent to his medical needs by disregarding his requests for treatment of severe back pain and skin inflammation for more than four weeks. ECF No. 1, ¶ 9. As the Supreme Court has recognized an Eighth Amendment claim for denial of medical care under *Bivens*, *see Carlson*, 446 U.S. at 18-19, the Court must consider whether Plaintiff has alleged sufficient facts to state a plausible claim.

Plaintiff's allegations regarding DuKane are sparse. In addition to the allegation that DuKane disregarded Plaintiff's complaint of back pain and skin inflammation "due to retaliation," Plaintiff later characterizes DuKane's actions as "lo[]sing [Plaintiff's] medical complaint." *Id.*, ¶ 15.[2]

To state a claim for deliberate indifference to a serious medical need, Plaintiff must allege facts showing both that his need was serious, and that the defendant acted with a sufficiently culpable state of mind.[3] *See Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) (citing, *inter alia*, *Estelle v. Gamble*, 429 U.S. 97 (1976)). There are both objective and subjective components to the deliberate indifference standard. Objectively, the alleged deprivation must be "sufficiently serious." *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013). A

---

[2] DuKane also allegedly refused to acknowledge Plaintiff's various medical issues, including kidney stones, "bone on bone back pain," and vision issues that would have precluded housing him on the third floor. *Id.*, ¶ 9. These latter allegations against DuKane appear to be more relevant to Plaintiff's conditions of confinement, a cause of action which is not cognizable under *Bivens*.

[3] Because a *Bivens* action is the non-statutory federal counterpart of a civil rights action under 42 U.S.C. § 1983, the courts look to section 1983 cases for applicable law. *See Taverez v. Reno*, 54 F.3d 109, 110 (2d Cir. 1995).

"sufficiently serious" deprivation can exist if Plaintiff suffers from an urgent medical condition that is capable of causing death, degeneration, or extreme or chronic pain. *See Brock v. Wright*, 315 F.3d 158, 162-63 (2d Cir. 2003); *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). The defendant also must have been "subjectively reckless." *Spavone*, 719 F.3d at 138. This requires that the defendant was "*actually aware* of a substantial risk" that Plaintiff would suffer serious harm as a result of the defendant's actions or inactions. *Id.* The defendant "need only be aware of the risk of harm, not intend harm," and "awareness may be proven 'from the very fact that the risk was obvious.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 842 (1994)). Negligence that would support a claim for medical malpractice does not rise to the level of deliberate indifference. *Hathaway*, 99 F.3d at 553.

Plaintiff alleges that he suffered severe pain for more than four weeks. ECF No. 1, ¶ 9. Thus, the Court assumes for purposes of initial review that he had a serious medical need.

Plaintiff has not, however, sufficiently alleged the subjective requirement of the deliberate indifference standard. He has alleged no facts to support the allegation that DuKane was aware of a substantial risk that Plaintiff would suffer serious harm as a result of DuKane's action or inaction, or that DuKane acted with a sufficiently culpable state of mind. Plaintiff has submitted as an exhibit to his Complaint a copy of a medical request form dated "August 2020" that states his medical issue is "back pain and inflam[m]ation of the skin." Compl., Ex. E, ECF No. 1-1 at 12. In response to the question about when the problem began, Plaintiff's response on the form was: "more than 20 years." *Id.* Plaintiff also indicated that he had been seen by a doctor for the problem. *Id.* Under the section entitled "What do you need?," none of the boxes— for "idle," "test results," "follow up," "medication renewal," "put on call-out," or "medical information"—were checked.

*Id.*

Plaintiff's remarks on this form would not be sufficient to put DuKane on notice of the possibility that Plaintiff would suffer serious harm from inaction. The remarks do not explain the severity of the pain or skin inflammation or suggest any acute cause. Rather, the form suggests that these are chronic problems for which Plaintiff had sought and received medical attention in the past. Given that Plaintiff did not fill out the portion of the form about what he needed, it is difficult to see how the risk of serious harm would have been obvious to DuKane. Plaintiff has therefore not met the threshold for alleging that DuKane was subjectively reckless.

Plaintiff's Eighth Amendment medical claim against Defendant DuKane is therefore DISMISSED without prejudice. Plaintiff may file an amended complaint to address the deficiencies explained in this ruling.

### 2. First Amendment Retaliation Claim

Plaintiff asserts three possible retaliation claims: Defendant Coutino retaliated against him by sticking a dirty screwdriver in his food and accusing him of stealing, ECF No. 1, ¶ 11; Defendant Pizzano retaliated against him by losing his personal property, *id.*, ¶ 12; and Defendant Easter retaliated against him by housing him in a unit with no immediate guard where he was assaulted by a younger inmate, *id.*, ¶ 13. Plaintiff also characterized his claim against Defendant DuKane as "retaliation," without further elaboration. *Id.*, ¶ 9.

The Supreme Court has never recognized, under *Bivens*, a First Amendment right to be free from retaliation. *See, e.g.*, *Reichle v. Howards*, 566 U.S. 658, 663 n.4 (2012) ("We have never held that *Bivens* extends to First Amendment claims."). In general, the courts that have applied the *Ziglar* analysis to a claim of First Amendment retaliation by an inmate have noted the existing

11

alternative remedial structures, including the BOP administrative grievance process and writ of habeas corpus. *See, e.g.*, *Widi v. Hudson*, No. 9:16-CV-1042 (FJS/DJS), 2019 WL 3491250, at *3-4 (N.D.N.Y. Aug. 1, 2019) (collecting cases); *Silva v. Canarozzi*, No. 3:18-CV-1771 (MPS), 2019 WL 1596346, at *3 (D. Conn. Apr. 15, 2019) (declining to extend *Bivens* to federal inmate's First Amendment retaliation claim due to "the Supreme Court's expressed reluctance to recognize new causes of action under *Bivens*" and because inmate had an "alternative avenue for relief" available to him in the form of a petition for writ of habeas corpus under 28 U.S.C. § 2241); *see also Wilson v. Bolt*, No. 9:18-CV-416 (DNH/TWD), 2019 WL 3561742, at *3 (N.D.N.Y. Aug. 6, 2019) (dismissing First Amendment retaliation claim filed under *Bivens*), *appeal dismissed*, (2d Cir. Nov. 18, 2019).

Moreover, consideration of special factors counsel against finding that an inmate's retaliation claim should give rise to a *Bivens* claim. As *Ziglar* explained, Congress's decision not to include "a standalone damages remedy against federal jailers" for prisoner abuse in the Prisoner Legislative Reform Act ("PLRA") arguably counsels against extending a *Bivens* damages remedy to inmates seeking to extend *Bivens* in a new context.[4] *Ziglar*, 137 S. Ct. at 1865; *see also Oneil v. Rodriguez*, No. 18-CV-3287 (AMD) (LB), 2020 WL 5820548, at *5 (E.D.N.Y. Sept. 30, 2020)

---

[4] In *Ziglar*, the Supreme Court stated:

> Some 15 years after *Carlson* was decided, Congress passed the Prison Litigation Reform Act of 1995, which made comprehensive changes to the way prisoner abuse claims must be brought in federal court. *See* 42 U.S.C. § 1997e. So it seems clear that Congress had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs. This Court has said in dicta that the Act's exhaustion provisions would apply to *Bivens* suits. But the Act itself does not provide for a standalone damages remedy against federal jailers. It could be argued that this suggests Congress chose not to extend the *Carlson* damages remedy to cases involving other types of prisoner mistreatment.

*Id.* at 1865 (internal citation omitted).

("Congress' legislative action in the area of prisoners' rights through the PLRA, including by requiring an administrative process, weighs against extending a *Bivens* remedy to the plaintiff's [First Amendment retaliation, Eighth Amendment excessive force, and Fifth Amendment equal protection] claims."); *Negron v. United States*, No. 19-CV-05442 (PMH), 2020 WL 5634304, at *8 (S.D.N.Y. Sept. 21, 2020) ("Regarding special factors that counsel against extending *Bivens*, courts are generally reluctant to review decisions related to prison administration—such as the decision to transfer an inmate to a new facility—because such decisions 'require[ ] expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government.'" (alteration in original) (quoting *Ojo v. United States*, 364 F. Supp. 3d 163, 176 (E.D.N.Y. 2019)); *White v. Hess*, No. 14-CV-03339 (CBA) (LB), 2020 WL 1536379, at *6 (E.D.N.Y. Mar. 31, 2020) ("In sum, White's retaliation claim involves executive policies, implicates separation-of-power concerns, and threatens a large burden to both the judiciary and prison officials. . . . The Court thus conclude[s] that the special factors analysis prevents an extension of *Bivens* to cover White's First Amendment retaliation claims." (second alteration in original) (internal quotation marks and citations omitted)).

Accordingly, the *Ziglar* analysis militates against affording a *Bivens* remedy for a federal inmate's First Amendment retaliation claim in light of the special factors counselling against extension of the *Bivens* remedy and the availability of alternative remedies. As *Bivens* is not an available remedy for a First Amendment retaliation claim, Plaintiff's retaliation claims are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

### 3.     Eighth Amendment Conditions Claim

Plaintiff alleges that Defendant Easter subjected him to unconstitutional conditions of

13

confinement and was deliberately indifferent to his health and safety by assigning him to a unit on the third floor when it was difficult for him to negotiate the stairs because of his physical and vision issues, ECF No. 1, ¶ 9, and without a guard on duty at all times, *id.*, ¶ 13. Plaintiff's claim that he was forced to shovel snow despite having a medical excuse also arguably falls under a conditions of confinement claim.

The Court must first inquire whether this claim fits under one of the established *Bivens* categories of actions or is new. The Court concludes that this case presents a new *Bivens* context, as it is not similar to any of the three recognized *Bivens* cases. Plaintiff's challenge to being housed on the third floor "bear[s] little resemblance" to "a claim against [federal] agents for handcuffing a man in his own home without a warrant; a claim against a Congressman for firing his female secretary; and a claim against prison officials for failure to treat an inmate's asthma." *Ziglar*, 137 S. Ct. at 1860.

No Supreme Court decision has extended *Bivens* to encompass the conditions of confinement claims asserted by Plaintiff. Indeed, in *Ziglar*, the Court rejected *Bivens* claims, albeit asserted under different constitutional provisions, asserted by immigration detainees challenging the official policies that caused their detention and the conditions of their confinement in federal immigration custody. *Id.* at 1852-53, 1860, 1865. Thus, Plaintiff's claim presents a new *Bivens* context.

Additionally, as discussed above in the context of Plaintiff's retaliation claims, the BOP administrative remedy procedures and a petition for writ of habeas corpus are alternative remedies to a federal lawsuit. Moreover, the existence of the PLRA cautions hesitation in creating a new *Bivens* remedy. Other courts have not extended *Bivens* to a conditions of confinement claim. *See,*

*e.g.*, *White*, 2020 WL 1536379, at *7 (declining to extend *Bivens* to federal prisoner's non-medical conditions of confinement claim); *Gonzalez v. Hasty*, 269 F. Supp. 3d 45, 63-65 (E.D.N.Y. 2017) (declining to extend *Bivens* to Eighth Amendment non-medical conditions of confinement claim regarding conditions in restrictive housing); *see also, e.g.*, *Venizelos v. Bittenbender*, No. 3:19-cv-01219, 2020 WL 7775457, at *7-8 (M.D. Pa. Dec. 8, 2020) (declining to extend *Bivens* to conditions of confinement claim concerning transfer to restrictive housing, transfer to higher security prison, and denial of visitation and communication privileges over several years) (citing cases), *report and recommendation adopted*, 2020 WL 7773905 (M.D. Pa. Dec. 30, 2020).

Importantly, extending *Bivens* to encompass Plaintiff's conditions claim would increase the Judiciary's involvement in "[p]rison administration . . . , a task that has been committed to the responsibility of [the Legislative and Executive] branches.'" *Turner v. Safley*, 482 U.S. 78, 85 (1987).  It would involve the courts in the housing of inmates, an area Congress has left to the discretion of the BOP.  *See, e.g.*, 18 U.S.C. § 4042(a)(2) (mandating BOP "provide suitable quarters and provide for the safekeeping, care, and subsistence of all [inmates]").

As Plaintiff has alternative remedies and there are special factors counselling hesitation, the Court declines to extend *Bivens* to encompass Plaintiff's Eighth Amendment conditions of confinement claim.  This claim is DISMISSED pursuant to 28 U.S.C. § 1915A(b)(1).

### 4. Fifth Amendment Lost Property Claim

Plaintiff alleges that Defendant Pizzano lost his personal property.  ECF No. 1, ¶ 12.  The Court construes this claim as brought under the Due Process Clause of the Fifth Amendment.  "[A] mere allegation of property deprivation does not by itself state a constitutional claim"; there also must be an allegation that the inmate was deprived of due process of law.  *Stuto v. Fleishman*, 164

15

F.3d 820, 825 (2d Cir. 1999) (citing *Hudson v. Palmer*, 468 U.S. 517, 539 (1984) (O'Connor, J., concurring)). Where an intentional deprivation of property was "random and unauthorized" and not the result of an established state policy or procedure,[5] due process is satisfied if BOP has provided a meaningful post-deprivation remedy. *See Jones v. Fed. Bureau of Prisons*, No. 11-CV-4733 (KAM)(MDG), 2013 WL 5300721, at *12 (E.D.N.Y. Sept. 19, 2013) (citations omitted).

The BOP has available administrative procedures to address lost property claims. *See Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 228 n.7 (2008) ("Federal agencies have authority under 31 U.S.C. § 3723(a)(1) to settle certain 'claims for not more than $1,000 for damage to, or loss of, privately owned property that . . . is caused by the negligence of an officer or employee of the United States Government acting within the scope of employment.'" (alteration in original)). Further, under 31 U.S.C. § 3724, Plaintiff could have filed a claim with the Attorney General to settle claims for losses up to $50,000 caused by law enforcement personnel. Courts have found these "administrative procedures . . . adequate to preclude a *Bivens* claim for a due process violation." *Jones*, 2013 WL 5300721, at *12 (collecting cases). Thus, as Plaintiff had adequate administrative remedies available to him, any Fifth Amendment due process claim is DISMISSED pursuant to 28 U.S.C. § 1915A(b)(1).

### 5. Review of Compassionate Release Decision

Plaintiff's Complaint contains numerous references to BOP's decision not to release him to home confinement. However, he does not appear to state a claim for relief related to this issue.

---

[5] Plaintiff's Complaint states that "defendant created a custom or policy fostering the violation or uncaring allowed the custom or policy to continue after learning of." ECF No. 1, ¶ 15(3). The paragraphs of the Complaint that he cites to support this allegation, however, relate to release of some inmates in connection with the COVID-19 pandemic, *see id.*, ¶ 3, and Plaintiff's purported exhaustion of remedies, *see id.*, ¶ 7. These paragraphs do not adequately allege that there was a state policy or procedure that caused Plaintiff's alleged loss of property.

The Court thus declines to address it.

### IV. CONCLUSION

For the reasons explained herein, Plaintiff's Complaint is dismissed in full, without prejudice to Plaintiff filing an amended complaint that addresses the deficiencies identified in this Order, particularly with respect to the Eighth Amendment claim against Defendant DuKane. Any amended complaint must be filed by **March 9, 2022**.

SO ORDERED at Hartford, Connecticut this 7th day of February 2022.

/s/
Sarala V. Nagala
United States District Judge